USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/8/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
ARCADIA AVIATION PHF, LLC,

          *Petitioner*,

          -*against*-                                12-cv-06177 (PAC)

AERO-SMITH, INC.,                          **OPINION & ORDER**

          *Respondent*.
------------------------------------------------------------- x

HONORABLE PAUL A. CROTTY, United States District Judge:

Petitioner Arcadia Aviation PHF LLC ("Arcadia" or "PHF") seeks confirmation of a 2017 arbitral award in its favor. Respondent Aero-Smith, Inc. ("Aero-Smith" or "ASI") seeks to vacate and set aside the award. For the reasons set forth below, the Court grants Arcadia's motion to confirm the arbitral award and denies Aero-Smith's motion to vacate.

## BACKGROUND

Arcadia Aviation PHF LLC is one of several limited liability companies created by Robert Garrett Jr. between 2006 and 2011 that operate under the umbrella name of "Arcadia." Pet'r's Mot. Ex. C ("Arbitration Award") at 4. The purpose of PHF and Garrett's other companies was to acquire and operate aircraft-related businesses, including fixed-based operations at two airports." Pet'r's Reply Ex. 1 ("ASI Arbitration Brief") at 1. Aero-Smith is a Maryland corporation and a fixed-based operator in West Virginia. *Id.*

Sometime in 2011, the parties reached an agreement (the "Agreement") whereby Aero-Smith purchased Arcadia's key assets, most of which were located at the Eastern West Virginia Regional Airport in Martinsburg, West Virginia. Arbitration Award at 4. The Agreement

included the acquisition of a contract with an unidentified third party. *Id.* at 5.[1] The Agreement provided that Aero-Smith was to pay Arcadia $13,800 per month between October 1, 2011, and September 30, 2016 (or a period of up to sixty months), for a total of $828,000. *Id.* at 7.

This dispute arose when Aero-Smith failed to make the required monthly payments to Arcadia. *Id.* at 6. On March 19, 2015, the parties submitted to arbitration governed by the Commercial Rules of the American Arbitration Association (the "Rules"). Order, Dkt. 30. The parties appointed Robert C. O'Brien of Arent Fox LLP as the sole arbitrator. Pet'r's Mot. Ex. A ("Arbitrator Order") at 1. Under the arbitration agreement, O'Brien was permitted to depart from the Rules in his sole discretion. *Id.*

At arbitration, Aero-Smith did not dispute that it had failed to make the required payments to Arcadia. Arbitration Award at 6. Instead, Aero-Smith argued that it was not obligated to make the required payments because: (1) Arcadia breached the Agreement first; (2) Arcadia was insolvent at the time the required payments were due; and (3) Arcadia was not the party to the underlying contract with the unidentified third party.[2] *Id.*

At the conclusion of the arbitration, the arbitrator awarded Arcadia $796,995.16. *Id.* at 13. He also awarded Arcadia uncompounded pre-judgment and post-judgment interest at a rate of 6.75%, with the pre-judgment interest beginning to accrue as of April 1, 2014. *Id.* at 14-15. He did not award Arcadia attorneys' fees. *Id.* at 15.

In his reasoned award, the arbitrator addressed Aero-Smith's three aforementioned arguments:

---

[1] The identity of the party to the underlying contract was not disclosed because "such discussion would unnecessarily disclose information that is akin to a confidential trade secret and could severely damage the party to the underlying contract." Arbitration Award at 6.
[2] The total value of the award was reduced by several deductions granted by the arbitrator to Respondent. Arbitration Award at 11-12.

2

> *First*, Aero-Smith's principal defense to Arcadia's claim is that it was excused from the making the payments under section 3 of the Agreement due to a prior breach of the Agreement by Arcadia.
>
> . . . .
>
> Section 5(a) of the Agreement provides that "a failure by either party to make a payment due under this agreement, following 30 days' written notice of default from the non-defaulting party" "shall be an Event of Default." On April 2, 2012, counsel for Aero-Smith contacted Arcadia and demanded payment of the $58,000. Whether the demand from Aero-Smith's counsel constituted formal notice of default under the Agreement is immaterial because on April 30, 2011, Arcadia paid Aero-Smith the $58,000 in full. Aero-Smith accepted the payment. Thus, within 30 days of Aero-Smith's demand, Arvadia cured its default. Said cure was accepted at the time without protest by Aero-Smith.
>
> Accordingly, I determine that Arvadia timely cured its default pursuant to the provisions of the Agreement.

*Id.* at 7-8. In addressing Aero-Smith's second argument, the arbitrator stated that:

> Section 5(b) of the Agreement provides that the "bankruptcy or insolvency of either party" "shall be deemed to be an event of default." Notwithsanding Aero-Smith's allegation of insolvency, the record is entirely devoid of evidence that Arcadia filed a federal bankruptcy petition at any time. Further, there was no credible evidence adduced that Arcadia was ever insolvent. Instead, the undisputed evidence showed that Arcadia engaged in a responsible wind down of the operations of its various affiliates and paid its debts. Additionally, there was no evidence that Aero-Smith ever sent Arcadia a notice of default on this alleged ground. Therefore, the alleged insolvency of Arcadia is not a factually or legally valid basis for Aero-Smith's refusal to pay the amounts due under section 3 of the Agreement.

*Id.* at 9. The arbitrator provided three separate responses in addressing Aero-Smith's third and final argument:

> *Third*, Aero-Smith argues that because Arcadia was not a party to the underlying contract that generated the revenue from which Arvadia was to be paid, it cannot prevail on its claim. This argument fails for three independent reasons.
>
> One, the Agreement requires Aero-Smith to make the payments to Arcadia for the sixty-month term or for as long as the party to the underlying contract continues to pay Aero-Smith. There is nothing in the Agreement conditioning such payments on the identity of the counter parties to the underlying contract.
>
> Two, the underlying contract was entered into by an affiliate company of Arcadia. The evidence adduced in the case showed a history of the dealings between the Arcadia parties on one side and the Aero-Smith parties on the other side without a necessary regard for use of formal company names in all instances.

> Three, at the time the Agreement was entered into, for reasons known to both Arcadia and Aero-Smith, neither party nor their transactional counsel had access to the underlying contract, so that they could confirm the names of the specific entities to contract. . . . The fact that neither Arcadia nor Aero-Smith knew during the performance of the contract the names of the contracting parties to the underlying contract did not and does not now provide Aero-Smith with an excuse for non-payment.

*Id.* at 9-10.

On January 26, 2018, Arcadia moved the Court to confirm the arbitration award pursuant to 9 U.S.C. § 9, which provides in pertinent part that:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9. On February 12, 2018, Aero-Smith filed its opposition to Arcadia's motion and sought to have the arbitration award vacated.

## DISCUSSION

### A.   Legal Standard

A reviewing court must grant a petition to confirm an arbitration award "unless the award is vacated, modified, or corrected as prescribed" by 9 U.S.C. §§ 10 and 11. Pursuant to 9 U.S.C. § 10, there are four circumstances in which an award may be vacated:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

4

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). There is debate about a "judicially-created ground, namely that an arbitration decision may be vacated when an arbitrator has exhibited a manifest disregard of law." *See Jock v. Sterling Jewlers Inc.*, 646 F.3d 113, 121 (2d Cir. 2011) (internal quotations omitted).

"It is well-settled that judicial review of an arbitration award is narrowly limited." *Barbier v. Shearson Lehman Hutton Inc.*, 948 F.2d 117, 120 (2d Cir. 1991). "[C]onfirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court . . . ." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (internal quotations omitted). Furthermore, an arbitration award should be confirmed "if a ground for the arbitrator's decision can be inferred from the facts of the case." *Id.* All that is required to confirm an arbitration award is "a barely colorable justification for the outcome reached by the arbitrator[]." *Id.* (quoting *Barbier*, 948 F.2d at 121). In essence, "the sole question . . . is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Hagan v. Katz Communications, Inc.*, 200 F.Supp.3d 435, 446 (S.D.N.Y. 2016) (quoting *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564 (2013)).

**B.    Analysis**

Aero-Smith's arguments against confirmation of the award fall well short of the FAA grounds for vacatur.

First, Aero-Smith argues that "the arbitrator exceeded his power and abused his discretion by rewarding PHF for its lack of diligence while prejudicing Aero-Smith for relying on the Arbitration Rules and the underlying facts asserted by PHF in its pleadings of record." ASI Resp. at 4. The basis of this argument is the fact that the arbitrator allowed Arcadia to

5

"substitute[] a new party-plaintiff for PHF." *Id.* at 3. Aero-Smith argues that by granting Petitioner's motion to substitute, the arbitrator "severely prejudiced" Aero-Smith, and "negat[ed] months of preparation, the identification of Aero-Smith's witnesses and the presentation of Aero-Smith's testimony based on the allegations made in PHF's complaint." *Id.* at 3-4. Aero-Smith attempts to support this argument by pointing to Arbitration Rule 6, which provides that:

> R-6 Change of Claim
>
> After filing a claim, if either party desires to make any new or different claim or counterclaim, it shall be made in writing and filed with the AAA. The party asserting such a claim or counterclaim shall provide a copy to the other party, who shall have 15 days from the date of such transmission within which to file an answering statement with the AAA. After the arbitrator is appointed, however, no new or different claim may be submitted except with the arbitrator's consent.

*Id.* at 3.

The Court need not inquire into whether Rule 6 is relevant to this case, however, as the arbitration agreement signed by both parties to this lawsuit expressly stated that, "in light of the unique nature of this dispute, the arbitrator, in his sole discretion, may depart from the Rules, as necessary, to promote efficiency and fairness in these proceedings." Arbitrator Order at 1. While Aero-Smith concedes that "the arbitrator had discretion under the Arbitration Rules in conducting the arbitration," it nonetheless argues that "the arbitrator exceeded his power and abused his discretion by rewarding PHF for its lack of diligence." ASI Resp. at 4. This argument lacks merit. The inquiry into whether an arbitrator exceeded his powers "focuses on wehther the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 346 (2d Cir. 2010) (citations omitted).

The arbitrator stated that because of the high profile nature of the underlying contract with the third party, the contract at issue here was kept from the parties to the arbitration for much of the arbitration process, preventing Arcadia from ascertaining which Arcadia entity was in fact the party to the contract. Arbitration Award at 10. Hence, when the parties were able to access the contract, the arbitrator permitted Arcadia to assert the proper entity as a party to the arbitration. *See id.* The record provides no basis to conclude that the arbitrator exceeded his power by permitting the correct entity to be named in the arbitration, nor a basis to conclude that this substitution prejudiced Aero-Smith in any way.

In his reasoned award, the arbitrator addressed this issue specifically. *See* Pet'r's Mot. Ex. C at 10. The parties submitted to arbitration to resolve a contractual dispute, and it is clear that the sensitive nature of the party to the underlying contract's identy required the arbitrator to impose certain limitations on the arbitration proceedings in order to maintain the third party's confidentiality. In fact, the arbitrator highlighted these limitations several times throughout his award. Thus, the Court finds that the arbitrator did not exceed his power or abuse his discretion by allowing the substitution.

Second, Aero-Smith argues that the delivery of the award was beyond the parameters of Arbitration Rule 41, which states that:

> The award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than 30 days from the date of closing the hearing, or, if oral hearings have been waived, from the date of the AAA's transmittal of the final statements and proofs to the arbitrator.

ASI Resp. at 4. The Court need not consider more than the arbitration agreement signed by both parties in order to dispose of this argument. Since the arbitrator was permitted to depart from the Arbitration Rules at his sole discretion, there is no basis for Aero-Smith's argument.

7

Third, Aero-Smith argues that "the arbitrator's eleventh hour ruling and selective consideration of the testimony and exhibits demonstrates an unwarranted partiality that favored PHF." ASI Resp. at 5. To support the latter part of its argument, Aero-Smith offers nothing that supports the vacatur of an arbitration award under 9 U.S.C. § 10. Aero-Smith makes several statements regarding testimony and evidence adduced during the arbitration, and in essence argues that the arbitrator made, in Aero-Smith's opinion, the incorrect decision in finding for Petitioner. *See* ASI Resp. at 5-9. But the Court is not called upon to judge the correctness of an arbitrator's decision. *See D.H. Blair Co.*, 462 F.3d at 110.

Furthermore, "[t]he arbitrator's rationale for an award need not be explained, and . . . [o]nly a barely colorable justification for the outcome reached by the arbitrator[] is necessary to confirm the award." *Id.* (quoting *Barbier*, 948 F.2d at 121). In making arguments based solely on the factual and evidentiary aspects of the arbitrator's decision, Aero-Smith in essence argues that it simply disagrees with the arbitrator's decision. Such arguments serve only to flout "the twin goals of arbitration, namely to settle disputes efficiently and avoid long and expensive litigation." *Wells Fargo Advisors, LLC v. Mercer*, 14 Civ. 9279, 2016 WL 110526, at *3 (S.D.N.Y. Jan. 8, 2016) (citation omitted).

Lastly, Aero-Smith argues "that the award is imperfect under 9 U.S.C. § 10(a)(4)." ASI Resp. at 9. Aero-Smith states only that the award to Arcadia "is fundamentally defective because Arcadia is not a legal entity capable of receiving or executing an award." *Id.* at 10. Respondent offers no support for this bald, conclusory argument.

The Second Circuit has stated that a § 10(a)(4) inquiry "focuses on whether the arbitrator[] had the power based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrator[] correctly decided that issue." *T. Co Metals*, 592

8

F.3d at 346 (citation omitted). Indeed, "once [a court] determine[s] that the parties intended for the arbitrat[or] to decide a given issue, it follows that the arbitrat[or] did not exceed its authority in deciding that issue – irrespective of whether it decided the issue correctly." *Id.* (citation omitted). Aero-Smith has no basis for vacatur under § 10(a)(4). The arbitrator's award is a clear resolution of the dispute between the parties pursuant to the Agreement. The award does not expand beyond the boundaries of what was at issue before the Court and the arbitrator.

The Court concludes that the arbitrator issued a reasoned award as required by the arbitration agreement signed by both parties.

## CONCLUSION

For the reasons stated above, Arcadia's motion to confirm the arbitration award is GRANTED and Aero-Smith's motion to vacate and set aside the award is DENIED. The Clerk of Court is directed to enter judgment in favor of Arcadia and against Aero-Smith in the amount of $796,995.16 plus uncompounded interest of 6.75% per annum from April 1, 2014 until payment is made, terminate all pending motions, and close this case.

Dated: New York, New York
August 2, 2018

SO ORDERED

*[signature]*

PAUL A. CROTTY
United States District Judge

9